IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONISHA "MICHELLE" CELAYA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-1096-D |
| VS. | § | |
| | § | |
| AMERICAN PINNACLE | § | |
| MANAGEMENT SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The instant motion to compel arbitration of plaintiff's race discrimination and retaliation claims presents the questions whether plaintiff agreed to arbitrate her claims and whether the arbitration agreement is unconscionable or otherwise foreclosed under Texas law. For the reasons that follow, the court grants the motion and compels the parties to arbitrate plaintiff's claims.

I

Plaintiff Ronisha "Michelle" Celaya ("Celaya") sues American Management Services LLC d/b/a Pinnacle ("Pinnacle"),[1] alleging claims for race discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*,

---

[1] In her complaint, Celaya refers to Pinnacle in the caption as "American Pinnacle Management Services, LLC" and in the introduction as "American Management Services LLC d/b/a Pinnacle." Compl. at 1. In its answer, Pinnacle refers to itself as "American Management Services LLC d/b/a Pinnacle." Answer at 1. This distinction is immaterial for purposes of this decision.

and 42 U.S.C. § 1981, arising from the termination of her employment. Celaya worked for Pinnacle as the business manager of an apartment property in Dallas. Pinnacle contends that Celaya signed an Issue Resolution Agreement ("Agreement") on October 11, 2007. Under the Agreement, Celaya and Pinnacle agreed to "settle any and all previously unasserted claims, disputes or controversies arising out of or relating to [Celaya's] application or candidacy for employment, employment, and/or cessation of employment with [Pinnacle] . . . *exclusively* by final and binding *arbitration* before a neutral Arbitrator." D. App. 7 (bold font omitted; underlined terms italicized). The Agreement provides that, if Celaya commences arbitration, "it will be conducted in accordance with the Issue Resolution Rules." *Id.* at 8. The Agreement also states that Celaya has "read this Agreement and understand[s] that [she] should read the Issue Resolution Rules over the next few days." *Id.* at 9. The Issue Resolution Rules provide, in pertinent part, that all claims arising under Title VII and § 1981 "shall be subject to arbitration," *id.* at 13, and they require that an arbitration request form be submitted "not later than one year after the date on which the Employee knew, or through reasonable diligence should have known, of the facts giving rise to the Employee's claim(s)," *id.* at 15 (bold font omitted).

Celaya admits that the Agreement was "presented to [her] during the employment application process when Pinnacle took over a company where she was working," and that she "signed this Agreement October 11, 2007." P. Resp. 2.[2] She also concedes that the

---

[2]Under N.D. Tex. Civ. R. 1.1(g), "[t]he term 'judge's copy' means a paper copy of an original pleading, motion, or other paper that is submitted for use by the presiding judge."

signature on the Agreement "appears to be [her] signature," P. App. 1, and that she "signed an Arbitration Agreement," *id.* at 3.  Nevertheless, Celaya makes several assertions that suggest that she contests that she signed the Agreement and that her execution of the Agreement was knowing and informed.  She avers that "the date on the [Agreement] does not make sense to [her]," P. App. 1-2, because, "to the best of [her] recollection," she was employed by Pinnacle's predecessor company on the date she allegedly signed the Agreement, *id.* at 2.  Celaya also avers that she does not remember signing the document, and that she would not have understood it had she read it.

Pinnacle moves to compel arbitration and to stay or dismiss this case under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  Celaya opposes the motion.

II

Section 2 of the FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. The statute "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3-4).

---

But the judge's copy of her response that Celaya submitted is a different version from the one she filed electronically.  For example, the sentence quoted in the text is found in the judge's copy but is phrased somewhat differently in the electronically-filed version.  These differences are immaterial to the court's decision.

When adjudicating a motion to compel arbitration, the court engages in a two-step process. First, the court determines "whether the parties agreed to arbitrate the dispute." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996) (per curiam). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* at 258. In deciding whether the parties agreed to arbitrate the dispute, "courts apply the contract law of the particular state that governs the agreement." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citation omitted).

Second, the court decides "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). In making the second determination, the court applies the contract law of the particular state that governs the agreement. *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004). If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute.

"The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 Fed. Appx. 310, 315 (5th Cir. 2012) (per curiam). "[T]here is a 'strong federal policy in favor of enforcing arbitration agreements.'" *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (quoting *Dean Witter Reynolds*, 470 U.S. at 217). Because of this strong presumption, "a party seeking to invalidate an arbitration

agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir. 2004).

III

A

The court first considers whether Pinnacle and Celaya agreed to arbitrate this dispute. Celaya contends that the date of her signature on the Agreement "does not make sense to [her]." P. App. 1-2. She also avers that she does not remember signing the Agreement and would not have understood it had she read it.

Under Texas law, "[a] party's signature on a written contract is 'strong evidence' that the party unconditionally assented to its terms." *In re December Nine Co.*, 225 S.W.3d 693, 699 (Tex. App. 2006, orig. proceeding) (citations omitted). Unless a party can show she was fraudulently induced to sign a contract, she "is bound by the terms of the contract [s]he signed, regardless of whether [s]he read it or thought it had different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (orig. proceeding) (per curiam) (citations omitted). And when a signed arbitration agreement incorporates an unsigned writing by reference, the unsigned writing is enforceable as part of the agreement "so long as the contract signed by the [party] plainly refers to [the other] writing." *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App. 2003, orig. proceeding).

B

Pinnacle has proved by a preponderance of the evidence, through its introduction of a copy of the signed Agreement, that Celaya agreed to arbitrate. Celaya's contention that the

date on the Agreement "does not make sense to [her]," P. App. 1-2, is not a direct and unequivocal denial that she signed the document, and it does not discredit Pinnacle's evidence that Celaya in fact signed it. And Celaya's assertion that she does not recall reading and signing the Agreement, and that she would not have understood it had she read it, does not negate her acceptance of the Agreement's terms. Accordingly, the court finds from a preponderance of the evidence that Pinnacle has established the existence of a valid agreement between Pinnacle and Celaya to engage in arbitration. The court also finds that the Agreement plainly incorporates by reference the Issue Resolution Rules and that the Rules' terms are enforceable as part of the Agreement.

The next question is whether the dispute in question falls within the scope of the Agreement. The Agreement provides that Celaya must "settle any and all previously unasserted claims" through arbitration. D. App. 7. It also provides examples of the types of claims that must be submitted to arbitration, including Title VII claims. *Id.* The Issue Resolution Rules, in turn, provide that Title VII and § 1981 claims "shall be subject to arbitration." *Id.* at 13. The court finds that Pinnacle has proved that the Agreement covers Celaya's Title VII and § 1981 claims.

Accordingly, the court finds that Pinnacle has proved by a preponderance of the evidence that Celaya agreed to arbitrate the claims she is asserting in this lawsuit against Pinnacle.

IV

The court next considers whether any legal constraints external to the Agreement foreclose the arbitration of this dispute.

A

Celaya argues that the Agreement is unconscionable because it shortens the statute of limitations periods that would otherwise apply to claims under Title VII and § 1981. Assuming that this is an issue for the court to address,[3] under Texas law, "a shortened statute of limitations will not necessarily render an arbitration provision unconscionable." *Universal Computer Consulting Holding, Inc. v. Hillcrest Ford Lincoln-Mercury, Inc.*, 2005 WL 2149508, at *7 (Tex. App. 2005, orig. proceeding). To show that the Agreement is unconscionable on this basis, Celaya must present some evidence that the limitations period is unconscionable in light of the parties' backgrounds and the circumstances of the case, *id.*, which she has failed to do. The court therefore holds that Celaya has failed to meet the burden required to establish that the Agreement is unconscionable on the basis that it contains a limitations period that is shorter than what would otherwise apply to her claims under Title VII and § 1981.

---

[3]The interpretation and application of time limits contained in arbitration agreements is "presumptively for the arbitrator, not for the judge." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002); *see also Redish v. Yellow Transp., Inc.*, 2008 WL 2572658, at *6 (N.D. Tex. June 24, 2008) (O'Connor, J.). The court will assume that this is an issue for the court because it is a basis for Celaya's assertion of unconscionability.

B

Celaya also argues that the Agreement is unconscionable because the shortened statute of limitations period "deprives [her] of full recovery of the backpay she would be statutorily entitled to under 42 U.S.C. §1981." P. Resp. 6. Assuming that this is a question for the court,[4] under Texas law, courts need not assume that time limits like the one here will "bar[] any claims accruing more than one year before arbitration is demanded." *Universal Computer Consulting,* 2005 WL 2149508, at *6. The limitations period in the Agreement could "merely ensure[] that arbitration is promptly demanded." *Id.* This is especially true where the arbitration agreement allows the arbitrator to award "appropriate relief in accordance with applicable law," including injunctive remedies like reinstatement, D. App. 22; where the limitations period runs, not from the accrual of the claim, but from the time the employee becomes aware, or through reasonable diligence should have become aware, of the facts giving rise to her claim, *compare id.* at 15 *with* Decl. Aileen McCormick, Ex. A at 3, *Pruiett v. West End Restaurants, LLC*, No. 3:11-00747, 2011 WL 5520969 (M.D. Tenn. Nov. 14, 2011) (requiring employees to file claims "no later than one year after the claim arises" or within the statutory limitations period if that period is less than one year); and where controlling precedent does not command that a statute be liberally construed, *cf. Long v. BDP International, Inc.*, 919 F.Supp.2d 832, 846 (S.D. Tex. 2013) (concluding that one-year limitation period in arbitration agreement was unconscionable as applied to Fair Labor

---

[4]*See supra* note 3.

Standards Act ("FLSA") claims because FLSA "is to be construed liberally and enforced fully") (citing *Allen v. McWane, Inc.*, 593 F.3d 449, 452 (5th Cir. 2010)). The court holds that Celaya has failed to meet the burden required to establish that the Agreement is unconscionable on the basis that it will limit claims for backpay under § 1981.

C

Celaya contends that the Agreement's one-year time limit for filing claims conflicts with Rule 4(i)(1) of the American Arbitration Association ("AAA"), and that this conflict supports a finding of unconscionability. Assuming that this is a question for the court,[5] Celaya cites no Texas law holding that a conflict between an arbitration agreement's provisions and the controlling arbitration organization's procedural rules renders the arbitration agreement unconscionable. And the single case that Celaya cites is neither controlling nor on point. *See Anderson v. Regis Corp.*, 2006 U.S. Dist. LEXIS 31302, at *22 (N.D. Okla. Apr. 26, 2006) (stating that arbitration provisions that limit the time during which party can seek arbitration "may be unenforceable in some circumstances" but that issue "[did] not have a significant impact on this case"). The court holds that Celaya has failed to meet the burden required to establish that the Agreement is unconscionable because its time limit may conflict with the AAA's rules.

---

[5]*See supra* note 3.

D

Finally, Celaya posits that the Agreement's time limit provision conflicts with a provision of Texas law that states:

> a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

Tex. Civ. Prac. & Rem. Code Ann. § 16.070(a) (West 2008). But Celaya is not bringing suit on a stipulation, contract, or agreement. She is suing for alleged violations of two federal statutes. *See Adevereaux v. Sports & Fitness Clubs of Am., Inc.*, 2004 WL 414896, at *2 (N.D. Tex. Feb. 17, 2004) (Kaplan, J.) (holding in context of Title VII suit that § 16.070(a) did not invalidate one-year claim period in arbitration agreement); *Vincent v. Comerica Bank*, 2006 WL 1295494, at *4 (S.D. Tex. May 10, 2006) (holding in context of defamation suit that § 16.070(a) did not forbid six-month claim period in employment contract); *Hitchcock v. Bd. of Trs. Cypress-Fairbanks Indep. Sch. Dist.*, 232 S.W.3d 208, 215 (Tex. App. 2007, no pet.) (holding in context of Texas statutory claim that § 16.070(a) did not forbid 15-day claim period established by school policy). The court holds that Celaya has failed to meet the burden required to establish that the Agreement conflicts with § 16.070(a).

Accordingly, the court holds that Celaya has failed to show that legal constraints external to the Agreement foreclose the arbitration of this dispute.

* * *

For the reasons explained, the court grants Pinnacle's motion to compel arbitration in accordance with the Agreement. This case is stayed pending completion of arbitration. The clerk of court is directed to close this case statistically. After the arbitration is concluded, a party may move the court to reopen the case statistically for further proceedings provided for under the FAA.

**SO ORDERED.**

August 29, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE